IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY EGGLESTON, NICHOLAS MACHOVEC, SERENITY ALMOND, MATTHEW BUTLER and BRANDON ANDREWS on behalf of themselves and all others similarly situated,<br><br>       **Plaintiffs,**<br> -against-<br><br>USCC SERVICES, LLC, a Delaware limited liability company,<br><br>       **Defendant.** | CASE NO. 1:16-cv-6775<br><br>Honorable Judge Jorge L. Alonso |

**MEMORANDUM OF LAW IN SUPPORT OF THE PARTIES' JOINT
MOTION FOR APPROVAL OF SETTLEMENT, AND PLAINTIFFS'
*UNOPPOSED* MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs, Bradley Eggleston, Nicholas Machovec, Serenity Almond, Matthew Butler and Brandon Andrews ("Named Plaintiffs"), and Defendant, USCC Services, LLC ("Defendant"), have agreed, subject to the Court's approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The settlement, which followed a thorough investigation, significant discovery, and issuance of notice to putative class members, satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective-action settlement because it resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations by experienced counsel, which was assisted by a private mediator, and provides good value to the Class Members to whom it will benefit.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.  Factual Allegations**

Named Plaintiffs are former employees of Defendant who worked as Sales Managers

1

("SMs"). Eggleston worked as a SM for Defendant in Oklahoma City, Oklahoma from approximately May 2012 to February 2015. Machovec worked as a SM for Defendant in Clinton, Iowa from approximately November 2010 to May 2014. Almond was employed by Defendant as a SM from approximately October 2010 to October 2016 in Marchesney Park, Illinois. Butler worked as a SM for Defendant in Beloit, Wisconsin from approximately November 2004 to July 2016. Andrews worked as a SM for Defendant in Springfield, Missouri from approximately October 2014 to October 2016. ECF No. 63 ("Compl.") ¶¶ 15, 21, 27, 33, 39. Plaintiffs asserted claims for unpaid overtime wages on the basis that Defendant improperly classified them and other SMs as exempt from the overtime requirements of the FLSA, as well as Illinois Statute 820 ILCS §§ 105 et seq. ("Illinois Minimum Wage Law"), Wisconsin Statute §§ 109.01 et seq. ("Wisconsin overtime law") and Missouri Statutes §§ 290.500 et seq. ("Missouri overtime law"). Defendant denies it committed any wrongdoing or violated any federal or state laws pertaining to payment of wages or hours worked and vigorously disputed the claims.

## II. Overview of Investigation, Litigation and Settlement Negotiations

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Shavitz Decl. ¶ 13[1]. Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs, including job descriptions, pay records, and corporate documents and conducted in-depth interviews of multiple SMs. *Id.*

As a result of their investigation, on June 28, 2016, Plaintiffs Eggleston and Machovec filed their Collective Action Complaint. *See* ECF No. 1.[2] The Court approved a 2-phased discovery plan. The first phase consisted of an initial limited discovery period which focused on

---

[1] The Declaration of Gregg I. Shavitz in Support of Motion for Approval of Settlement is attached as Exhibit 2.
[2] Plaintiffs filed an Amended Complaint [D.E. 25] September 23, 2016 substituting USCC Services, LLC for US Cellular Corporation because Defendant represented that US Cellular Corporation was not the proper Defendant.

2

the issue of whether Plaintiffs' FLSA claims could be conditionally certified as a collective action as well as the merits of Named Plaintiffs' and pre-notice Opt-In Plaintiffs'[3] individual claims.

Named Plaintiffs Eggleston and Machovec, and Defendant commenced discovery, which consisted of document requests and interrogatories. Additionally, Defendant took the depositions of Machovec and Eggleston, and Plaintiffs took the deposition of Defendant's corporate representative, Tabitha McKay, pursuant to Federal Rules of Civil Procedure 30(b)(6). *Id*. ¶ 15.

After completing the first phase of discovery, the parties stipulated to conditional certification and issuance of notice to all SMs employed by U.S. Cellular between January 1, 2014 and the end of the notice period on April 10, 2017. [D.E. #s 35, 36]. *Id*. ¶ 16. Notice was issued to 707 current and former SMs, and 96 individuals joined this action for a total of 105 Plaintiffs in this action. *Id*.

After the close of the opt-in period, the parties agreed to a second phase discovery plan. [D.E. 66]; *Id.* ¶ 17. Additionally, Plaintiffs filed their Second Amended Complaint asserting claims for unpaid overtime pursuant to Illinois, Missouri and Wisconsin state laws, with Plaintiffs Almond, Butler and Andrews, respectively, serving as class representatives. [D.E. 63]; *Id*. In an effort to mitigate further time and expenses on discovery, the Parties agreed to mediate the SMs' claims in an attempt to resolve this dispute without further litigation. *Id*.

In preparation for mediation, the Parties engaged in an informal exchange of information in which Defendant produced data to inform the damages calculation, including the number of potential class members employed as SMs, their salaries, and total weeks worked. *Id.* ¶ 18.

---

[3] At that time, there were 7 pre-notice Opt-In Plaintiffs, in addition to Eggleston and Machovec: Christopher Bersin, Misty Buchanan, Nicole Cate, Nicholas Kempf, Brent Rich, Jeremiah Rojas, and Jo-Ellen Strout.

Plaintiffs' Counsel analyzed this data and constructed a damages model. *Id.*

On June 13, 2017, the Parties attended private mediation in Chicago, Illinois with retired Judge Morton Denlow, a nationally well-regarded mediator who is experienced in class and collective actions. *Id.* ¶ 19. Despite a full day of mediation, the Parties did not reach an agreement but continued to negotiate over the course of the next 5 months. *Id.* Thereafter, the Parties reached a resolution, the terms of which are memorialized in a formal Settlement Agreement executed by the Parties on or about February 6, 2018. *Id.* ¶ 19.

## SUMMARY OF THE SETTLEMENT TERMS

### I. The Settlement Fund and Claim Procedure

The Settlement Agreement establishes a gross fund of $1,250,000.00 (the "Fund") from which Opt-In Class Members can claim settlement awards. Ex. 1 ¶ 1.12 (Settlement Agreement). The Fund covers any Court-approved service awards to the Named Plaintiffs, any Court-approved attorneys' fees and costs, and the claims administrator's ("Settlement Administrator's") fees and costs, in addition to class member awards. *Id.* Class Members include all current and former employees employed by Defendant in the position of SM who: (a) have filed a consent to join this lawsuit, have not been dismissed from the lawsuit or withdrawn their consent to join, ("Opt-Ins"); or (b) all other U.S. Cellular SMs employed at U.S. Cellular between June 20, 2014 and September 1, 2017 in Wisconsin, Illinois and Missouri and who are not Opt-Ins ("Non-Opt Ins"). *Id.* at ¶ 1.9.

Settlement Notices and Settlement Checks will be mailed, via First Class U.S. mail, by the Settlement Administrator no later than 35 calendar days after the Approval Order is entered. The Notice of Settlement will notify Opt-Ins of the Settlement and will also include a settlement check in the amount of the Opt-In's pro rata settlement share, calculated based on the date they

opted into this action and looking back 3 years from that date. The Notice of Settlement will advise Opt-Ins that by negotiating, signing, cashing, or depositing the settlement check, they will be providing Defendant with a release of their wage and hour claims for the time they worked as SMs between the 3 year period preceding when the Opt-In joined the Litigation and September 1, 2017, including FLSA claims and state law wage and hour claims, and claims for liquidated damages, attorneys' fees, costs and expenses associated with said wage and hour claims. The back of each Opt-Ins' settlement checks shall also contain similar release language.

A Notice of Settlement and Opportunity to Join Collective Action will be sent to Non-Opt Ins, and will notify Non-Opt Ins of the Settlement, inform Non-Opt Ins of their estimated pro-rata settlement share, and inform Non-Opt Ins that they are being provided with a second opportunity to participate in the case and will receive a settlement payment if they do. The Notice of Settlement and Opportunity to Join Collective Action shall include a Consent to Join. By signing and submitting the Consent to Join, Non-Opt Ins will release the same claims as Opt-Ins for the same temporal scope. A Non-Opt In who does not timely execute and return a Claim Form will not release any claims. Non-Opt Ins will have 60 days to return their completed Consent to Join Forms by U.S. Mail, email, or facsimile ("Claim Bar Date"). Any Non-Opt In who submits a completed Consent to Join during the Notice Period shall receive a settlement payment. Non-Opt Ins will be eligible to claim awards that are approximately 40% of the award that an Opt-In with the same number of workweeks would receive. Within 21 days after the later of the deadline for submission of Non-Opt In Claim Forms, the Settlement Administrator shall mail by First Class U.S. Mail all Settlement Checks to all Non-Opt Ins who submitted completed Consent to Join forms.

Settlement Checks issued pursuant to this Agreement will expire 120 days following their issuance ("Acceptance Period"). If a Settlement Check has not been executed by any Class Member within 30 days after it is received, the Settlement Administrator will send a letter or postcard reminding the Class Member of the expiration of the Acceptance Period.

## II.  Service Awards

Conditioned on the Court's approval, the Settlement Agreement provides Named Plaintiffs Eggleston and Machovec with service awards of $8,500.00 each, and Non-Opt In Representative Plaintiffs Almond, Butler, and Andrews with service awards of $2,500.00 each from the Fund in recognition of assistance rendered in obtaining the benefits of the settlement for the class as well as the risks they took to do so.

## III.  Settlement Claims Administration

The Parties have retained Rust Consulting ("Rust"), a wage and hour settlement administrator, to serve as the Settlement Administrator. Shavitz Decl. ¶ 21. The Settlement Administrator's fees of a maximum of $18,000.00 will be paid from the Fund. *Id*.

## IV.  Attorneys' Fees and Litigation Costs

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel will receive $416,666.66 (one-third of the $1,250,000.00 settlement) as attorneys' fees, plus reimbursement of up to $26,000.00 for reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter, including filing fees for the Complaint and pro hac vice admissions, service of process, case-related travel, court fees, court reporters, postage and courier fees, photocopies, telephone calls, and Plaintiffs' portion of the mediator's fees. Shavitz Decl. ¶ 33; Stephan Decl. ¶ 9[4].

---

[4] The Declaration of Ryan F. Stephan in Support of Motion for Approval of Settlement is attached as Exhibit 3.

**ARGUMENT**

**I.      A One-Step Approval Process Is Standard for FLSA Settlements**.

In the Seventh Circuit and throughout the country, a one-step approval process is appropriate in FLSA Opt-In settlements that do not include Rule 23 opt-out classes.[5] Section 216(b) collective actions such as this do not implicate the same due process concerns as Rule 23 class actions because they require workers to affirmatively opt in to the litigation. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank*, N.A., 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (due process concerns present in Rule 23 class actions are not present in FLSA collective actions). There is no need to require that the settlement provide for

---

[5]    *See, e.g.*, *Briggs v. PNC Financial Servs. Group, Inc., No.* 15-cv-10447 (N.D. Ill Nov. 29, 2016); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at 1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively Opt In in order to be bound by the settlement (including the settlement's release provision)."); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014); *Beatty v. Capital One Fin. Corp.*, No. 12 Civ. 434 (N.D. Ill. Dec. 13, 2012); *see also Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473 (D. Conn. May 23, 2013); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011).

opt-outs or objections where individuals are not part of the settlement unless they decide to participate. *Prena*, 2015 WL 2344949, at *1; *Woods*, 686 F.2d at 580.

## II.     The Settlement Is Fair and Reasonable and Should Be Approved.

The Court has a duty to "determine whether the proposed settlement is a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 n.9 (N.D. Ill. Oct. 6, 2011) (citations omitted). Courts approve wage and hour settlements that are reached as a result of contested litigation to resolve *bona fide* disputes.[6] If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts*, 2014 WL 4804252, at *2. "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

The settlement in this case easily meets the standard for approval. The settlement was the result of pre-suit investigation, extensive discovery, and substantial arm's-length negotiations. Shavitz Decl. ¶¶ 13-14. Recognizing the uncertain legal and factual issues involved, the Parties reached this settlement pending before the Court after private mediation before an experienced mediator. *Id.* ¶ 19. The settlement amount of $1,250,000.00 is substantial, especially in light of the considerable risk that Plaintiffs face.

*First*, after attorneys' fees, service awards, and costs, including settlement administration costs, are deducted, each Opt In will receive compensation for approximately 8 overtime hours each week on a half-time basis, and each Non-Opt In will receive compensation for approximately 3.2 overtime hours each week on a half time basis. *Id.* ¶ 23. By Plaintiffs'

---

[6]     *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11 Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler*, 2011 WL 4729789, at *8-9.

estimate, this is a substantial percentage of the putative Class's lost wages in light of Named Plaintiffs' initial claim that they worked an average of 10 overtime hours each week. *Id.* However, by Defendant's estimate, even if Plaintiffs were to establish at trial that SMs should have been classified as non-exempt, the lost wages of the putative Class would be much smaller.

*Second*, there was a risk that Plaintiffs would not succeed on class certification or with maintaining a collective through trial. Defendant would likely argue that the differences among various stores and other individualized questions precluded certification or would warrant decertification of a collective. Although Plaintiffs disagree, defendants have prevailed on such arguments. *See, e.g.*, *Gromek v. Big Lots, Inc.*, No. 10 Civ. 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying collective certification of assistant store manager claims); *Beckman*, 293 F.R.D. at 480 (collecting misclassification cases where courts decertified FLSA collectives).

*Third*, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. The status of SMs under the FLSA is highly contextual with facts pointing in both directions, and some cases supporting Defendant's position. For example, in *McCall v. First Tenn. Bank, N.A.*, the court found that a teller supervisor was exempt because of his supervision of tellers even though he spent a significant amount of time performing non-exempt teller duties. No. 13 Civ. 386, 2014 WL 2159007, at *1, *5-9 (M.D. Tenn. May 23, 2014). Although Plaintiffs believe this case is distinguishable, Defendant would likely argue that SMs are similar to the teller supervisors, warranting a similar outcome. Further, Courts in the Northern District of Illinois have similarly rejected assistant manager-type claims. *See, e.g.*, *Ottaviano v. Home Depot, Inc., USA*, 701 F. Supp. 2d 1005, 1007-10 (N.D. Ill. 2010) (dismissing claims of assistant store managers and finding they were properly classified as exempt under Illinois wage and hour

laws); *Jackson v. Go-Tane Servs., Inc.*, No. 99 Civ. 5686, 2001 WL 826867, at *3-4 (N.D. Ill. July 18, 2001) (granting summary judgment to employer on claims of certain assistant managers). While Plaintiffs believe they could ultimately prove liability, this would require significant development.

The proposed allocation of the settlement is reasonable. It reflects a proportion of damages owed to Class Members based on the number of weeks they worked for Defendant within the liability period, which is a reasonable approximation of each Class Member's damages, given the evidence that SMs tended to work similar hours. It allocates more to Opt-Ins, reflecting that their claims were stronger (given that they are part of the case regardless of whether any class certification motions are successful) and that by joining the suit they took on additional risks and obligations compared to Non-Opt Ins who are provided a second chance to participate despite not submitting a Claim Form after conditional certification was granted. *see Summers v. UAL Corp. ESOP Comm.*, No. 03 Civ. 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (approving allocation plan as reasonable when "settlement funds . . . will be disbursed on a pro rata basis").

The Court should also approve the proposed Settlement Notices. *See* Ex. 1 (Settlement Agreement) at Ex. B (Settlement Notices). The proposed Settlement Notices inform Class Members of the terms of the settlement, including the allocation formula, how they may participate (or not participate), the settlement payment to which they are entitled, the release, and the request for attorneys' fees and costs. *See Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distrib. Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *Bozak*, 2014 WL 3778211, at *3 (approving FLSA notice providing notice of settlement terms and options facing class).

**III.   The Service Awards to Named Plaintiffs Should Be Approved as Fair and Reasonable.**

Plaintiffs request approval of service awards of $8,500.00 each for Named Plaintiff Eggleston and Machovec, and $2,500.00 each for Non-Opt In Representative Plaintiffs Almond, Butler, and Andrews.  Named plaintiffs in class actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit."  *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).  This is especially true in employment litigation.  *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)).

Service awards also serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs.  *See, e.g.*, *Espenscheid*, 688 F.3d 872, 876-77 (7th Cir. 2012); *Cook*, 142 F.3d at 1016; *Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill. June 21, 2000) (recognizing incentive awards' importance).  In examining the reasonableness of a requested service award, courts consider: (1) the actions plaintiffs have taken to protect the interests of the class, (2) the degree to which the class has benefited from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation.  *Cook*, 142 F.3d at 1016; *Am.*

*Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 Civ. 2898, 09 Civ. 2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012).

The Named Plaintiffs satisfy the above elements. The Named Plaintiffs took substantial actions to protect the interests of the putative class members and those actions resulted in a substantial benefit. Named Plaintiffs Eggleston and Machovec participated in an extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims, responded to written discovery, traveled from their homes in Oklahoma and Iowa, respectively, for their depositions in Chicago, Illinois and assisted in preparation for mediation. *See Koszyk*, 2016 WL 5109196, at *3; *see also See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained contributions" to the litigation, which resulted in a sizable ERISA common fund); *In re Sw. Airlines Voucher Litig.*, No. 11 Civ. 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014) (approving service award in part because "there is a solid basis to believe that discovery," in which named plaintiffs actively participated, "improved the prospects for a favorable settlement"). Courts in this Circuit and others have approved comparable incentive awards for similar activities. *See Castillo v. Noodles & Co*., 2016 WL 7451626, at *6-8 (N.D. Ill. Dec. 23, 2016) (approving $10,000 service awards for each of four named plaintiffs in FLSA wage action); *Koszyk v. Country Fin*., 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016 (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action).

Additionally, Named Plaintiffs undertook substantial direct and indirect risk. They agreed to bring the action in their names, to be deposed, and to testify at trial. *Id.* ¶ 27. Thus, they assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the defendant's costs or even, if the suit [was] held to have been frivolous, for the defendant's

12

attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). Although no longer employed by Defendant when they joined the lawsuit, they merit recognition for risking retaliation from future employers.[7] "The incentive reward is designed to compensate [named plaintiffs] for bearing these risks." *Id.*; *accord Koszyk*, 2016 WL 5109196, at *3.

### IV. Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

#### A. The Court Should Award Attorneys' Fees From a Percentage of the Fund.

The Court should award attorneys' fees as a percentage of the total fund made available to the Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of a common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-692 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co.*, No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); *Boeing*, 444 U.S. at 478.[8] It is especially

---

[7] *See Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (recognizing that suits against former employers carry risks of professional and personal repercussions); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against a prior employer); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees."); *Guippone v. BH S & B Holdings, LLC*, No. 09 Civ. 1029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, at *1 (S.D.N.Y. Feb. 9, 2010) ("[F]ormer employees put in jeopardy their ability to depend on the employer for references[.]").

[8] Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the trend in this Circuit is to use

13

appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ." *Skelton*, 860 F.2d at 256; *accord Florin*, 34 F.3d at 564. Here, the settlement releases the Class Members' statutory claims to fees under the FLSA and state wage and hour laws.[9]

There are several other reasons that courts in the Seventh Circuit favor the percentage of the fund method. *First*, it promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). Where attorneys' fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998).[10]

*Second*, the percentage method preserves judicial resources because it saves the court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration"); *Gaskill*, 942 F. Supp. at 386 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (fee requests "should not result in a second major litigation")). Courts in this district

---

the percentage of the fund method in common fund cases like this one. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014); *Campbell*, 2012 WL 1424417, at *2 (FLSA settlement). The trend in other circuits is to use the percentage of the fund method as well. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001).

[9] *See, e.g.*, 29 U.S.C. §216(b).

[10] *See also, In re Amino Acid Lysine Antitrust Litig.*, No. 95 Civ. 7679, 1996 WL 197671, at *2 (N.D. Ill. Apr. 22, 1996) ( "in a common fund situation . . . a fee based on a percentage of recovery . . . tends to strike the best balance in favor of the clients' interests while at the same time preserving the lawyers' self-interest").

routinely apply the percentage method to common fund settlements, noting the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making. [11]

### B. The Results and Benefits Conferred Upon the Class Justify the Fee Award.

This Settlement will provide Class Members with a substantial cash payment. The Settlement Agreement provides that Defendant will pay a maximum settlement amount of $1,250,000.00 to settle all claims against them. *See* Shavitz Decl. ¶ 22. This is well within the range of reasonable recoveries for the Class Members and represents significant value given the attendant risks of litigation. *Id.* ¶ 22. The Settlement Agreement also does not present any signs of collusion. It was vigorously negotiated with the help of a well-respected class action employment law mediator, and the awards to the members of each class (Opt Ins and Non-Opt Ins) will be subject to the same respective allocation formulas. Shavitz Decl. ¶ 24. *see Dearaujo v. Regis Corp.*, No. 14 Civ. 1408, 2016 WL 3549473, at *10 (E.D. Cal. June 30, 2016) (noting court was "reassured" by presence of "experienced third-party neutral" Michael Dickstein). There is no "clear-sailing" provision. *Id.*; *cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 780 (7th Cir. 2014). Moreover, continued litigation would pose significant risks. While Plaintiffs believe they would prevail on their claims, Defendant has asserted numerous defenses as to liability and

---

[11] The Seventh Circuit's opinion in *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. July 1, 2015), has no impact on long-standing Seventh Circuit jurisprudence that in collective settlements, counsel should be awarded a portion of the fund their work creates. In *Pierce*, the Court addressed a unique situation where a lawyer obtained a judgment in his or her client's favor, recovered an attorneys' fee on a lodestar basis that the court found to be a reasonable fee, and then sought a second fee recovery on a percentage of the fund basis. *Id.* at 783-88.

15

damages. If Plaintiffs continued to litigate, they would have to contend with unfavorable decisions issued by district courts in this Circuit as to the status of SMs as exempt and class certification.

### C. Analysis of the Market for Legal Services Supports Plaintiffs' Request.

Courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

Here, Plaintiffs' Counsel's request is based on the market in the Northern District of Illinois where collective action lawyers routinely contract to receive one-third of any settlement as compensation for the risk of funding a potential multi-year litigation without any assurance of recovery. Stephan Decl. ¶ 9. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. *Id.* ¶ 10. Plaintiffs' Counsel are nationally recognized for their expertise in litigating complex class and collective actions and are justified in seeking compensation in the form of one-third of any potential settlement (plus costs) for their efforts. Shavitz Decl. ¶ 31; Stephan Decl. ¶ 11.

Before agreeing to take on this matter, Plaintiffs' Counsel agreed with Named Plaintiffs to request no more than one-third of any future recovery, plus costs. Shavitz Decl. ¶ 32. Thus, the Court knows precisely what private plaintiffs "would have negotiated with their lawyers, had

bargaining occurred at the outset of the case (that is, when the risk of loss still existed),") *In re Synthroid*, 264 F.3d at 718, 720, because they expressly contracted for the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

Courts regularly agree that "a counsel fee of 33.3% of the common fund is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers in an FLSA action." *Burkholder*, 750 F. Supp. 2d at 997 (collecting cases); *Rusin*, No. 12 Civ. 1135 (approving award of one-third settlement plus costs in wage and hour litigation); *Campbell*, 2012 WL 1424417, at *2 (same). Here, the requested fee is well within the market rate for common fund wage and hour actions within the Northern District of Illinois. *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund).[12]

## CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court issue an order substantially similar to the Proposed Order attached as Ex. A to Ex. 1: (1) approving the $1,250,000.00 settlement as a fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release; (2) approving the proposed Settlement Notices and direct their distribution; (3) approving service awards of $8,500.00 each to Bradley Eggleston and Nicholas Machovec, and $2,500.00 each to Serenity Almond, Matthew Butler, and Brandon Andrews for

---

[12] *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Zolkos*, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (same); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"). Accordingly, Plaintiffs' fee request is reasonable and should be granted.

their service to the collective; (4) approving Plaintiffs' request for one-third of the settlement fund for attorneys' fees; approving litigation costs and expenses in the amount of $26,000.00; (5) approving the Settlement Administrator's fees and costs of $18,000.00; (6) incorporating the terms of the Settlement Agreement; (7) dismissing this case with prejudice, but retaining jurisdiction to enforce the terms of the settlement.

February 7, 2018                                                            Respectfully submitted,

| **/s/ Camar R. Jones**<br>Gregg I. Shavitz<br>Camar R. Jones<br>Shavitz Law Group, P.A.<br>1515 South Federal Hwy, Suite 404<br>Boca Raton, FL 33432<br>(561) 447-8888<br><br>Ryan F. Stephan (Lead)<br>James B. Zouras<br>Catherine T. Mitchell<br>Stephan Zouras, LLP<br>205 N. Michigan Ave.<br>Suite 2560<br>Chicago, IL 60601<br>(312) 233-1550<br><br>*Counsel for Plaintiffs* | **/s/ Sean M. Scullen**<br>Sean M. Scullen<br>Christopher L. Nickels<br>Quarles & Brady, LLP<br>411 East Wisconsin Avenue, Suite 2350<br>Milwaukee, WI 53202-4426<br>(414) 277-5000<br><br>Adrianne C. Mazura (Lead)<br>Brian A. Hartstein<br>300 N. LaSalle Street, Suite 4000<br>Quarles & Brady, LLP<br>Chicago, Illinois 60654<br>(312) 715-5000<br><br><br><br>*Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on February 7, 2018, I filed the attached with the Clerk of the Court using the electronic filing system which will send such filing to all attorneys of record.

                                                */s/Ryan F. Stephan*