# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRADLEY EGGLESTON, NICHOLAS MACHOVEC, SERENITY ALMOND, MATTHEW BUTLER and BRANDON ANDREWS on behalf of themselves and all others similarly situated,** | **CASE NO. 1:16-cv-6775** |
| **Plaintiffs,** | |
| **-against-** | |
| **USCC SERVICES, LLC, a Delaware limited liability company,** | |
| **Defendant.** | |

## <u>JOINT STIPULATION AND RELEASE</u>

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between BRADLEY EGGLESTON, NICHOLAS MACHOVEC, SERENITY ALMOND, MATTHEW BUTLER, and BRANDON ANDREWS (collectively, the "Named Plaintiffs"), individually and on behalf of the collective and class of individuals that they seek to represent, (collectively with Named Plaintiffs, "Plaintiffs") in the matter *Eggleston, et al. v. USCC Services, LLC*, No. 1:16-cv-6775, and Defendant, USCC SERVICES, LLC d/b/a US CELLULAR ("Defendant" or "US CELLULAR") (together with Plaintiffs, the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiffs filed a Second Amended Collective and Class Action Complaint ("Complaint") asserting claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as Illinois Statute 820 ILCS §§ 105 et seq., Wisconsin Statute §§ 109.01 et seq. and Missouri Statutes §§ 290.500 et seq. for the alleged failure to pay overtime compensation to Named Plaintiffs and those similarly situated (the "Litigation"); and

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in Section 4 of this Agreement, including all claims asserted in the Litigation and those claims that could have been so asserted under the FLSA or state law based on the allegations in the Complaint relating to the non-payment of overtime to individuals employed in the position of Sales Manager at US CELLULAR who have filed a consent to join this lawsuit and have not been dismissed from the lawsuit or withdrawn their consent to join; or worked in Illinois, Wisconsin or Missouri between June 20, 2014 and September 1, 2017; and

DocuSign Envelope ID: 44042FAF5741-60B7-9B1F-5B85161205F7

**WHEREAS**, US CELLULAR denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Plaintiffs and Defendant agreed in April 2017 to engage in discussion regarding the possibility of a voluntary resolution of the claims asserted in the Litigation, and exchanged Sales Managers' employment and payroll data; and

**WHEREAS**, on June 13, 2017, the Parties participated in a mediation session of this matter in Chicago, Illinois, which was conducted by experienced wage-and-hour class action mediator and retired Judge Hon. Morton Denlow. Although the parties did not reach a resolution at mediation, the parties continued negotiations for approximately five (5) more months, resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against US CELLULAR in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to US CELLULAR's compensation policies and practices, and analyzed payroll data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs and the putative class and collective.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "**Acceptance Period**" means the one hundred twenty (120)-day period that an Eligible Settlement Class Member has to sign and cash a Settlement Check after it is mailed by the Settlement Administrator.

1.2 "**Class Counsel**" or "Plaintiffs' Counsel" means Shavitz Law Group, P.A. and Stephan Zouras, LLP.

1.3 "**Claim Bar Date**" means the 60th day period following the mailing of the Notice of Settlement and Opportunity to Join Collective Action (for Non-Opt-Ins) and represents the last day on which a Non-Opt In may submit a timely Consent to Join, except as provided in Section 2.9.

DocuSign Envelope ID: 44042FAE5741-6807-081F5B85-61205F7

1.4     "**Complaint**" means the Second Amended Collective and Class Action Complaint [D.E. 63] dated June 20, 2017 that was filed by Named Plaintiffs in this Litigation.

1.5     "**Consent to Join**" means claim forms submitted by Non-Opt Ins to join this Litigation, and release their claims against Defendant as provided in paragraph 4.1.

1.6     "**Court**" means the United States District Court for the Northern District of Illinois.

1.7     "**Defendant**" or "US CELLULAR" means USCC Services, LLC.

1.8     "**Defendant's Counsel**" means Quarles & Brady, LLP.

1.9     "**Eligible Settlement Class Member**" means any and all current and former employees employed by US CELLULAR in the position of Sales Manager who:

    1.9.1   filed a consent to join the Litigation, have not been dismissed from the Litigation or withdrawn their consent to join, and worked at any time during the three (3) years prior to the date that the Sales Manager opted-in to this Litigation ("Opt-Ins"); or

    1.9.2   did not previously file a consent to join the Litigation and worked in Illinois, Wisconsin or Missouri between June 20, 2014 and September 1, 2017 ("Non-Opt-Ins").

1.10    "**Eligible Work Week**" means any and all weeks during which an Eligible Settlement Class Member performed any compensable work for US CELLULAR in the position of Sales Manager during:

    1.10.1  the three (3) years prior to the date that the Sales Manager opted-in to this Litigation, if that Eligible Settlement Class Member is an Opt-In; or

    1.10.2  the period between June 20, 2014 and September 1, 2017 if that Eligible Settlement Class Member is a Non-Opt-In.

1.11    "**Employer Payroll Taxes**" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.12    "**Gross Settlement Amount**" means One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00), which is the maximum amount that Defendant has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating Settlement Class Members; the cost of settlement administration; and any Court-approved Service Awards. Defendant will not be required to pay any more than the gross total of One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00), except for the Employer Payroll Taxes.

DocuSign Envelope ID: 44042FAE5741-4087A931-5D85161205F7

1.13 "**Last Known Address**" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Class Member as shown in Defendant's records.

1.14 "**Litigation**" or the "Lawsuit" or the "Action" mean the lawsuit entitled *Eggleston, et. al. v. USCC Services, LLC,* Case No. 1:16-cv-6775 in the United States District Court for the Northern District of Illinois.

1.15 "**Mediation Data**" means the workweek data produced to Plaintiffs' Counsel on May 15, 2017 in advance of the Parties' mediation.

1.16 "**Named Plaintiffs**" means Bradley Eggleston, Nicholas Machovec, Serenity Almond, Matthew Butler, and Brandon Andrews.

1.17 "**Net Settlement Fund**" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) the Settlement Administrator's fees and costs; (b) Court approved attorneys' fees and costs for Plaintiffs' Counsel; and (c) any Court-approved Service Awards, subject to any reversions related to (b) or (c).

1.18 "**Notice Period**" means the sixty (60) day period provided to Non-Opt Ins to return their completed Consent to Join forms to join the Litigation.

1.19 "**Order Granting Approval of Settlement**" or "**Approval Order**" means an order to be approved and entered by the Court, which gives approval to the Settlement, in a form substantially similar to the Proposed Approval Order, attached hereto as Exhibit A.

1.20 "**Participating Settlement Class Members**" means each Opt In who timely signs and cashes a Settlement Check, or Non-Opt In who signs and submits a completed Consent to Join the Litigation.

1.21 "**Parties**" collectively means the Named Plaintiffs and Defendant.

1.22 "**Qualified Settlement Fund**" or "**QSF**" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.23 "**Releasees**" means US CELLULAR and all of its affiliates, parents, subsidiaries, predecessors, successors, and its and their employees and agents, as set forth in Section 4 of this Agreement.

1.24 "**Re-Mailing Notice Period**" means the thirty (30) day period provided to a Non-Opt-In to sign and submit their Consent to Join if the Non-Opt In's Settlement Notice was returned to the Settlement Administrator as undeliverable.

1.25 "**Sales Manager**" or "**SM**" means those persons employed by US CELLULAR as Sales Managers in the United States, as that term was commonly used by US CELLULAR.

3

DocuSign Envelope ID: 44042F4E5741-4087-931F5D85161205F7

**1.26**    "**Settlement**" means the settlement between the Parties embodied and contained in this Agreement.

**1.27**    "**Settlement Administrator**" means the Settlement Administrator to be selected by Plaintiffs and approved by Defendant.

**1.28**    "**Settlement Agreement**" or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.29**    "**Settlement Check**" means the check issued to Eligible Settlement Class Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.30**    "**Settlement Notice**" means the documents entitled Notice of Settlement (for Opt-Ins) and Notice of Settlement and Opportunity to Join Collective Action (for Non-Opt-Ins), to be approved by the Court in a form substantially similar to the Notices attached hereto as Exhibit B.

**2.**    **APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT CLASS MEMBERS**

**2.1**    Binding Agreement.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**    Duties of the Settlement Administrator.  The Settlement Administrator will be responsible for establishing a QSF account; determining amounts due to Eligible Settlement Class Members pursuant to the terms of this Settlement Agreement; preparing and mailing the Settlement Notices to Eligible Settlement Class Members; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; retaining and providing copies of the Settlement Checks and Consent to Join forms signed by the Participating Settlement Class Members to Defendant's Counsel; and preparing a declaration describing all duties performed and claims administration statistics.

**2.3**    The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement.  The Settlement Administrator shall provide such information to counsel for either Party upon request.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Eligible Settlement Class Members, the claims administration process, and distribution of the Settlement Checks.

**2.4**    Defendant agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and provide reasonable assistance to the Settlement Administrator in locating Eligible Settlement Class Members.

DocuSign Envelope ID: 44042FAE5741-6897-9B1F5B85-6120EF7

2.5     By January 17, 2018, Plaintiffs' Counsel shall file a Motion for Order Approving Settlement of Class and Collective Action and Authorizing Notice of Settlement and Opportunity to Join Class and Collective Action ("Approval Motion"). Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court. With the Approval Motion, Plaintiffs' Counsel also will file the Settlement Agreement, Approval Order, and Settlement Notices. Among other things, the Approval Motion will ask the Court to: (a) issue and enter the Approval Order approving the Settlement as fair, adequate, and reasonable, and (b) approve the proposed Settlement Notices to be sent to Eligible Settlement Class Members and the Settlement Notice distribution process.

2.6     Within five (5) days after the Approval Order is entered by the Court, Defendant shall provide the Settlement Administrator with a list, in electronic form, of the names, Last Known Addresses, social security numbers, locations worked, Opt In dates and Eligible Work Weeks for each Eligible Settlement Class Member ("Class List").

2.7     This Settlement Agreement is intended to make payment to approximately 359 Eligible Settlement Class Members.

2.8     Settlement Notices and Settlement Checks will be mailed, via First Class United States mail, postage prepaid, to Eligible Settlement Class Members by the Settlement Administrator no later than thirty-five (35) days after the Approval Order is entered by the Court. If there is an appeal of the Approval Order by any person, Settlement Notices and Settlement Checks shall not be sent until all appeals are decided and the case is returned to the district court and the district court enters an Order that the Settlement Notices and Settlement Checks should be sent.

2.9     The Notice of Settlement sent will be sent to Opt Ins by First Class U.S. Mail, and will notify Opt-Ins of the Settlement and include a settlement check in the amount of the Opt In's pro rata settlement share, calculated based on the date they opted into this action and looking back three (3) years from that date. The Notice of Settlement shall advise Opt Ins that by negotiating, signing cashing, or depositing the settlement check, they will be providing Defendant with a release of their wage and hour claims during the time they worked as exempt classified Sales Managers, including FLSA claims and state law wage and hour claims, including claims for liquidated damages, penalties, attorneys' fees, costs and expenses relating to the alleged violation occurring between the three (3) year period preceding when the Opt-In joined the Litigation through September 1, 2017. The back of the Opt-Ins' settlement checks shall also contain similar release language.

2.10    The Notice of Settlement and Opportunity to Join Collective Action sent to Non-Opt-Ins will notify Non-Opt-Ins of the Settlement and that they are being provided with a second opportunity to participate in the case and will receive a settlement payment if they do. Notice to Non-Opt-Ins will be made by First Class U.S. Mail with a postage-paid addressed return envelope. The Notice of Settlement and Opportunity to Join Collective Action will inform Non-Opt Ins of their estimated pro-rata settlement share. The Notice of Settlement and Opportunity to Join Collective Action shall include a Consent to Join. By signing and submitting the Consent to Join, Non-Opt-Ins will release their wage and hour claims,

5

DocuSign Envelope ID: 44042FAF5741-4087-931-5D85J6120F57

including FLSA claims and state law wage and hour claims that arise directly from Plaintiffs' claim that Defendant misclassified Sales Managers as exempt and did not pay exempt classified Sales Managers overtime wages for hours worked in excess of forty (40) in any workweek, including claims for liquidated damages, penalties, attorneys' fees, costs and expenses relating to the alleged violation. Non-Opt-Ins may return their completed Consent to Join Forms by United States Mail, email, or facsimile within sixty (60) days of the Notice of Settlement and Opportunity to Join Collective Action was mailed ("Notice Period"). Any Non-Opt In who submits a completed Consent to Join during the Notice Period shall be paid a portion of the Net Fund based on a pro-rata share of work weeks. Non-Opt-Ins will be eligible to claim awards that are approximately forty percent (40%) of the award that an Opt-In with the same number of workweeks would receive. Within seven (7) days after the later of the Claim Bar Date or the end of the Re-Mailing Notice Period, the Settlement Administrator shall advise Defense Counsel of the amount of the remaining funds necessary to satisfy the claims of the Non-Opt-Ins who submitted Consent to Join forms, if any. Within fourteen (14) days after the later of the Claim Bar Date or the end of the Re-Mailing Notice Period, Defendant shall pay to the QSF the additional funds required to satisfy the claims of the Non-Opt-Ins who submitted Consent to Join forms, if any. Within twenty one (21) days after the later of the Claim Bar Date or the end of the Re-Mailing Notice Period, the Settlement Administrator shall mail by First Class U.S. Mail all Settlement Checks to all Non-Opt-Ins who submitted completed Consent to Join forms.

2.11    Settlement Checks issued pursuant to this Agreement shall expire one hundred and twenty (120) days following their issuance ("Acceptance Period"). If a Settlement Check has not been cashed by any Eligible Settlement Class Member within thirty (30) days after it is mailed, the Settlement Administrator shall send a letter or postcard reminding them of the expiration of the Acceptance Period. After the Acceptance Period expires, the Settlement Administrator will issue a stop payment order on all uncashed or returned checks. In the event an Eligible Settlement Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check. The reissued check shall be valid for ninety (90) days. In no event shall an Eligible Settlement Class Member be issued a replacement check until any prior check sent to them has been cancelled.

2.12    The Settlement Administrator shall take all reasonable steps to obtain the correct address of Eligible Settlement Class Members for whom the Settlement Notice, Consent to Join or Settlement Check is returned by the United States Postal Service as undeliverable. The Settlement Administrator may perform skip traces and re-mail any Settlement Notice, Consent to Join or Settlement Check up to three (3) times. The Settlement Administrator will notify Plaintiffs' Counsel and Defendant's Counsel of any mailing sent to any Eligible Settlement Class Member that is returned as undeliverable. To the extent any Settlement Notice to a Non-Opt In is returned as undeliverable, that Eligible Settlement Class Member shall be permitted the greater of the balance of the remaining Notice Period or thirty (30) days from any re-mailing of the Settlement Notice ("Re-mailing Notice Period") to sign and submit their Consent to Join.

**2.13**   Plaintiffs' Counsel and Defendant's Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process. The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

**2.14**   Retention/Filing of Copies of Settlement Checks and Consent to Join Forms. The Settlement Administrator shall on a weekly basis compile and transmit to Defendant's Counsel and Plaintiffs' Counsel statistics on the number of Opt Ins who have signed and cashed Settlement Checks, and Non Opt Ins who filed Consent to Join forms and signed and cashed Settlement Checks. At the end of the Acceptance Period, the Settlement Administrator shall provide to Plaintiffs' Counsel and Defendant's Counsel copies of signed and cashed checks, and all Consent to Join forms submitted by Non-Opt-Ins. Plaintiffs' Counsel shall file with the Court a summary list of the Participating Settlement Class Members within fourteen (14) days of the expiration of the Acceptance Period for Non Opt Ins.

**2.15**   Effect of Court Failure to Approve Settlement. In the event that the Court fails to approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement (b) and/or either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted, except that both parties agree to work cooperatively and to petition the court for additional time such that neither party is prejudiced by the delay caused by the parties' settlement efforts. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

**3.     SETTLEMENT TERMS**

**3.1    Settlement Payments.**

   (A)   Defendant agrees to pay up to a maximum gross amount of One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Class Members, any Court-approved Service Awards as more fully set forth herein, the Settlement Administrator's fees and costs and any claim for attorneys' fees and costs. Defendant will not be required to pay more than this amount under the terms of this Agreement, with the exception of Employer Payroll Taxes.

   (B)   Within ten (10) days of the Approval Order, Defendant shall deposit the Opt In portion of the Gross Settlement Amount, as well as Plaintiffs' Counsel's Attorneys' Fees and Costs, Named Plaintiffs' Service Awards, and the Settlement Administrators expenses into the QSF. Defendant shall deposit half of the Non-

DocuSign Envelope ID: 4042FAE-7411-4239-A68D-5D851512AE57

Opt-In portion of the Gross Settlement Amount into the QSF within forty (40) days from the date the Court grants approval of the settlement and the administrator following the Notice Period shall advise if additional funding is needed for the Non-Opt-In group. If any additional funds are needed, Defendant shall deposit such funds into the QSF within seven (7) business days of being notified by the Settlement Administrator.

(C) Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Class Members who do not timely sign and cash their Settlement Check, or that otherwise remains in the QSF or under the control of the Settlement Administrator upon the final accounting of the settlement funds, shall revert to Defendant.

(D) The final accounting and reversion shall occur no later than one hundred sixty (160) days after the first Settlement Checks are mailed.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A) In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiffs' Counsel shall seek reimbursement of reasonable actual case-related costs and expenses, not to exceed $26,000.00, from the Gross Settlement Amount. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case.

(B) The settlement is not conditioned on the Court's approval of Plaintiffs' Counsel's petition for fees, costs and expenses. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder. Any money requested for attorneys' fees or costs that are not approved by the Court shall revert to Defendant.

**3.3     Service Awards to Certain Plaintiffs.**

(A) In their Approval Motion, Named Plaintiffs will apply to the Court to receive Service Awards in the amount of Eight Thousand Five Hundred and 00/100 ($8,500.00) each to Bradley Eggleston and Nicholas Machovec, and Two Thousand Five Hundred and 00/100 Dollars ($2,500.00) each to Serenity Almond, Matthew Butler, and Brandon Andrews from the Gross Settlement Amount for the services they rendered to the Collective and the Class.

(B) These Service Awards and any requirements for obtaining any such payment are separate and apart from, and in addition to, Named Plaintiffs' recovery from the

8

Net Settlement Fund as an Eligible Settlement Class Members. The settlement is not conditioned on the Court's approval of Plaintiffs' Counsel's Service Awards. The substance of the Named Plaintiffs' application for a Service Award is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement. The outcome of the Court's ruling on the application for a Service Award shall not terminate this Agreement or otherwise affect the Court's ruling on the motion for settlement approval. Any Service Award money not approved by the Court shall revert to Defendant. Service awards approved by the Court shall be deemed non-wage compensation in their entirety and shall be reported to the IRS on a Form 1099. Named Plaintiffs who receive and accept a service award shall provide Defendant with a general release of claims that shall benefit Defendant and its subsidiaries, affiliates, business units, members, shareholders, and their predecessors and successors, officers, directors, agents, employees and assigns.

**3.4    Distribution of Payments.**

(A)    The payments from the Gross Settlement Amount to Plaintiffs' Counsel for any Court-approved attorneys' fees and costs will be wired to Plaintiffs' Counsel by the Settlement Administrator thirty-five (35) days after the Approval Order is entered. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(B)    The Settlement Checks will be mailed to Eligible Settlement Class Members by the Settlement Administrator along with the Settlement Notices in accordance with Sections 2.9, 2.10 and 2.11. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided and the case is returned to the district court and the district court enters an Order that the payments under this Section should be made.

(C)    Service Awards, allocated from the Gross Settlement Amount, shall be paid to the Named Plaintiffs from the QSF by the Settlement Administrator within thirty-five (35) days after the Approval Order is entered.

(D)    The allocation to Eligible Settlement Class Members for their Settlement Checks will be made from the Net Settlement Fund. The estimated proportionate share of the Net Settlement Fund for each Eligible Settlement Class Member will be determined by the Settlement Administrator pursuant to the following formula:

(1)    To calculate each Eligible Settlement Class Member's proportionate share:

(a)    Add all weeks for all Eligible Settlement Class Members together to obtain the "Denominator";

9

DocuSign Envelope ID: 4042FAE-7411-4839-A89D-FD85A612AE57

(b)     Divide the number of weeks for each Eligible Settlement Class Member by the Denominator to obtain each Eligible Settlement Class Members' "Portion of the Net Settlement Fund";

(c)     Multiply each Eligible Settlement Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Class Member's Settlement Check amount.

(2)     Each Eligible Settlement Class Member that is an Opt-In, including the Named Plaintiffs, shall be awarded the number of weeks he or she worked as a Sales Manager multiplied by the Portion of the Net Settlement Fund, resulting in their Settlement Check amount.

(3)     Each Eligible Settlement Class Member that is a Non-Opt-In shall be notified of an award using the same formula above for Opt Ins, except that Non Opt Ins' awards will be forty percent (40%) of the award that an Opt-In with the same number of workweeks would receive.

(E)     Tax Characterization of Payments.

(1)     For tax purposes, 50% of the payment to an Eligible Settlement Class Member pursuant to this Section 3.4 shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(2)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing IRS Form W-2 and Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety.

(3)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Settlement Class Member receiving a Settlement Check or Service Award. Defendant makes no

representations, and it is understood and agreed that Defendants have made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Class Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiffs. Neither Plaintiffs' Counsel nor Defendant's Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(4)     None of the amounts paid to the Named Plaintiffs or Participating Settlement Class Members shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Defendant, including for purposes of any bonus of any kind.

## 4.     RELEASE OF CLAIMS

4.1     All Settlement Checks to Opt Ins shall contain, on the back of the check, the following limited endorsement:

By signing and cashing this check, I waive, release, and forever discharge any claim I have or may have during the time I worked as an exempt-classified Sales Manager from the three (3) year period preceding my filing of a Consent to Join the Litigation to September 1, 2017. Specifically, I release all claims against US CELLULAR and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, as asserted in this case or that could have been so asserted in this case under the FLSA or state wage and hour law, based on the allegations in the complaint, including any claims for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act, and all state and local wage and hour laws. This includes claims for liquidated damages, attorneys' fees, costs, and expenses.

4.2     Non-Opt-Ins who submit a  Consent to Join will execute the following release:

By signing I waive, release, and forever discharge any demands, claims and actions I have or may have had between June 20, 2014 and September 1, 2017, against US CELLULAR, and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws in Illinois, Missouri and Wisconsin and all other state and local wage and hour laws, relating to my employment at US CELLULAR as a Sales Manager.

DocuSign Envelope ID: 4042FAE-7411-4839-A68D-FD85A519AE57

**4.3**    Any Eligible Settlement Class Member who does not timely sign and cash a Settlement Check or submit a properly completed Consent to Join will not be bound by any release of claims.

**4.4**    By signing the Agreement, all Named Plaintiffs who receive a Service Award additionally waive, release and discharge US CELLULAR, its affiliates, parents, subsidiaries, predecessors, successors, employee benefit plans, employees and agents, from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment at US CELLULAR, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the respective Named Plaintiff signs this Agreement. Named Plaintiffs do not release any claim that cannot be released as a matter of law or rights under this Agreement.

**4.5**    By signing the Agreement, Named Plaintiffs become parties to the Agreement.

**5.    VOIDING THE AGREEMENT**

**5.1**    If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Approval Order in substantially the form submitted by the Parties, or fails to enter a Final Judgment, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive, and Defendant shall have no obligations to make any payments under the Settlement or this Agreement.

**5.2**    Unless the Parties agree in writing otherwise, in the event that the Agreement is not approved by the Court or the Settlement set forth in the Settlement Agreement is revoked, terminated, cancelled, declared void or fails to become effective in accordance with its terms, or if there is no Approval Order, the Parties shall resume the Litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, and the approval of any settlement class for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated *nunc pro tunc*.

**6.    PARTIES' AUTHORITY**

6.1    The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

**7.    MUTUAL COOPERATION**

7.1     The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 8.     NOTICES

8.1     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and addressed as follows:

To Plaintiffs and/or Settlement Class:

Gregg I. Shavitz
Shavitz Law Group, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
(561) 447-8888
(561) 447-8831 (facsimile)
gshavitz@shavitzlaw.com

Ryan Stephan
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (facsimile)
rstephan@stephanzouras.com

To Defendant:

Sean M. Scullen
Quarles & Brady, LLP
411 East Wisconsin Avenue, Suite 2350
Milwaukee, Wisconsin 53202-4426
(414) 277-5000
(414) 978-8978

## 9.     NO ADMISSION OF LIABILITY

13

DocuSign Envelope ID: 4042FAF5-7411-4B39-A68D-FD85-612AEF7

9.1     Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant hase agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 10.     INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

10.1    Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

10.2    No Assignment. Plaintiffs' Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

10.3    Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

10.4    Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

10.5    Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

10.6    Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.7    Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

10.8    Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or

14

DocuSign Envelope ID: 4040F4E5-7411-4639-768D-FD85A520AF57

related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

10.9     Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.11    Counterparts.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

10.12    Facsimile, Electronic and Email Signatures.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

10.13    Signatories.  This Agreement is valid and binding if signed by Defendant's authorized representative and any one of the Named Plaintiffs.

**WE AGREE TO THESE TERMS.**

Dated: February _5_, 2018      **USCC SERVICES, LLC.**

By: _Deirdre C. Drake_

Its: _Chief Human Resources Officer_

Dated: February ___, 2018      BRADLEY EGGLESTON

_____

Dated: February ____, 2018      NICHOLAS MACHOVEC

_____

Dated: February ____, 2018      SERENITY ALMOND

_____

Dated: February____, 2018      MATTHEW BUTLER

_____

Dated: February ____, 2018      BRANDON ANDREWS

_____

16

**WE AGREE TO THESE TERMS.**

Dated:  January __, 2018          **USCC SERVICES, LLC.**

By:  _____

Its:  _____

Dated:  January 31 ___, 2018     BRADLEY EGGLESTON

_Bradley Eggleston_  _____
856B88257E48419...

Dated:  January _____, 2018     NICHOLAS MACHOVEC

_____

Dated:  January _____, 2018     SERENITY ALMOND

_____

Dated:  January_____, 2018     MATTHEW BUTLER

_____

Dated:  January _____, 2018     BRANDON ANDREWS

_____

16

**WE AGREE TO THESE TERMS.**

Dated:  January ___, 2018          **USCC SERVICES, LLC.**

By: _____

Its: _____

Dated:  January ____, 2018          BRADLEY EGGLESTON

_____

Dated:  January __30__, 2018     NICHOLAS MACHOVEC

_Nicholas Machovec_
66F597C074B545A...

Dated:  January _____, 2018     SERENITY ALMOND

_____

Dated:  January_____, 2018     MATTHEW BUTLER

_____

Dated:  January _____, 2018     BRANDON ANDREWS

_____

16

**WE AGREE TO THESE TERMS.**

Dated:  January __, 2018          **USCC SERVICES, LLC.**


By:  _____

Its:  _____

Dated:  January ___, 2018        BRADLEY EGGLESTON


_____

Dated:  January ____, 2018      NICHOLAS MACHOVEC


_____

Dated:  January ___31___, 2018      SERENITY ALMOND


Dated:  January____, 2018      MATTHEW BUTLER


_____

Dated:  January ____, 2018      BRANDON ANDREWS


_____

16

**WE AGREE TO THESE TERMS.**

Dated: January ___, 2018        **USCC SERVICES, LLC.**

By: _____

Its: _____

Dated: January ___, 2018        BRADLEY EGGLESTON

_____

Dated: January ____, 2018    NICHOLAS MACHOVEC

_____

Dated: January ____, 2018    SERENITY ALMOND

_____

Dated: January 30 ____, 2018    MATTHEW BUTLER

_Matthew Butler_
6CCFA28B0CDF47B...

Dated: January ____, 2018    BRANDON ANDREWS

_____

16

**WE AGREE TO THESE TERMS.**

Dated:  January __, 2018          **USCC SERVICES, LLC.**

By: _____

Its: _____

Dated:  January ___, 2018          BRADLEY EGGLESTON

_____

Dated:  January ____, 2018      NICHOLAS MACHOVEC

_____

Dated:  January ____, 2018      SERENITY ALMOND

_____

Dated:  January____, 2018      MATTHEW BUTLER

_____

Dated:  January ^30 ___, 2018      BRANDON ANDREWS



16

# Exhibit A

DocuSign Envelope ID: 4040FA5E-7411-4639-A680-FD8561620FF7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRADLEY EGGLESTON, NICHOLAS MACHOVEC, SERENITY ALMOND, MATTHEW BUTLER and BRANDON ANDREWS on behalf of themselves and all others similarly situated,**<br><br>               **Plaintiffs,**<br>    -against-<br><br>**USCC SERVICES, LLC, a Delaware limited liability company,**<br><br>               **Defendant.** | **CASE NO. 1:16-cv-6775** |

## [PROPOSED] ORDER APPROVING SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

The above-entitled matter came before the Court on Plaintiffs' Motion for Approval of Settlement, Service Awards, and Attorneys' Fees and Costs ("Motion for Settlement Approval"). After reviewing the Motion for Settlement Approval, the supporting Memorandum of Law in Support of the Motion for Settlement Approval (the "Memorandum"), and the Declaration of Ryan Stephan ("Stephan Decl.") and supporting declarations and exhibits, the Court hereby finds as follows:

### The Settlement Is Approved

1. The Court approves and incorporates by reference all of the definitions contained in the Settlement Agreement.

2. The Court hereby approves the One Million Two Hundred Fifty Thousand and 00/100 Dollars ($1,250,000.00) settlement. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes. *See, e.g.*, *Lynn's Food Stores, Inc. v.*

18

*United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11 Civ. 592, 2013 WL 5745102, at *1 (W.D. Wis. Oct. 23, 2013); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010); *see also Butler v. Am. Cable & Telephone, LLC*, No. 09 Civ. 5336, 2011 WL 4729789, at *8-9 (N.D. Ill. Oct. 6, 2011). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354; *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *2 (N.D. Ind. Sept. 25, 2014). "It is a well settled principle that the law generally encourages settlements." *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979).

3. Here, the settlement meets the standard for approval. The settlement was the result of vigorously contested litigation with extensive formal and informal discovery, stipulation for collective conditional certification, and arm's-length negotiations. Recognizing the uncertain legal and factual issues involved, the parties reached their settlement after attending private mediation before an experienced mediator, and five (5) additional months of arm's length negotiations.

## The Settlement Procedure Is Approved

4. A one-step settlement approval process is appropriate. *See, e.g.*, *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements."); *Watson, et al. v. BMO Financial Corp. and BMO Harris Bank, N.A.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF Nos. 34, 39 (granting request for one-step approval process); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (same). Collective actions under 29 U.S.C. § 216(b) require workers to affirmatively opt-in to the

DocuSign Envelope ID: 4404FAE7411-0832A68DFD851612AE57

litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA."). Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions. *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

5. The Settlement Notices attached to the Settlement Agreement as Exhibit B are approved. Plaintiffs shall make any necessary corrections to the dates in the Settlement Notices. The Settlement Notices sufficiently inform Opt-In and Non-Opt-In Eligible Settlement Class Members of the terms of the settlement, including how they may participate (or not participate), the estimated amount to which they are entitled under the allocation formula, the scope of the release, and the request for attorneys' fees and costs. *See Koszyk*, 2016 WL 5109196, at *2 (N.D. Ill. Sept. 16, 2016) (approving class notice that, *inter alia*, described settlement terms and fee allocation); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *6 (N.D. Ill. Dec. 12, 2014) (same); *Tobin v. Beer Capitol Distributing Inc.*, No. 12 Civ. 274, 2012 WL 5197976, at *3 (E.D. Wis. Oct. 19, 2012) (same); *see also Bozak v. FedEx Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *3 (D. Conn. July 31, 2014) (approving FLSA notice providing notice of settlement terms and options facing class).

6. The plan for sending the Settlement Notice as proposed by Plaintiffs is approved.

**The Service Awards Are Approved**

7. Service Awards of the amount of Eight Thousand Five Hundred and 00/100 Dollars ($8,500.00) each to Named Plaintiffs Bradley Eggleston and Nicholas Machovec, and Two Thousand Five Hundred and 00/100 Dollars ($2,500.00) each to the three (3) Non-Opt-In Representative Plaintiffs Serenity Almond, Matthew Butler, and Brandon Andrews are approved. The Service Awards shall be paid from the Gross Settlement Amount. Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

8. Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. *See, e.g., Espenscheid*, 688 F.3d at 876-77 (Posner, J.); *Cook*, 142 F.3d at 1016; *Massiah v. MetroPlus*

*Health Plan, Inc.*, No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012); *cf.*

*Follansbee v. Discover Fin. Servs., Inc.*, No. 99 Civ. 3827, 2000 WL 804690, at *7 (N.D. Ill.

June 21, 2000) (recognizing the importance of incentive awards). Accordingly, incentive awards

are commonly awarded to those who serve the interests of the class. *Massiah*, 2012 WL

5874655, at *8 (collecting cases); *accord Chesemore v. Alliance Holdings, Inc.*, No. 09 Civ. 413,

2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014); *Hawkins v. Securitas Sec. Servs. USA, Inc.*,

280 F.R.D. 388, 395 (N.D. Ill. 2011).

9. In examining the reasonableness of a requested service award, courts consider: (1) the

actions the plaintiffs have taken to protect the interests of the class, (2) the degree to which the

class has benefited from those actions, and (3) the amount of time and effort the plaintiffs

expended in pursuing the litigation. *Cook*, 142 F.3d at 1016; *Am. Int'l Grp., Inc. v. ACE INA

Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012). Here,

Plaintiffs satisfy all three (3) factors.

10. First, the Named Plaintiffs took substantial actions to protect the interests of potential

collective action members, and those actions resulted in a substantial benefit to those potential

collective action members. Named Plaintiffs Machovec and Eggleston participated in an

extensive pre-suit investigation, provided documents crucial to establishing Plaintiffs' claims,

responded to document requests and interrogatories, and traveled to Chicago, Illinois from their

respective homes in Oklahoma and Iowa to be deposed by Defendant. Courts in this Circuit

and others have approved comparable incentive awards for similar activities.

11. Second, the Named Plaintiffs and the Non-Opt In Representative Plaintiffs undertook

substantial direct and indirect risk. The Named Plaintiffs agreed to bring this Action in their

names, to be deposed, and to testify if there was a trial. In so doing, Named Plaintiffs assumed significant risk that "should the suit fail, [they could] find [themselves] liable for the Defendant's costs or even, if the suit [was] held to have been frivolous, for the Defendant's attorneys' fees." *Espenscheid*, 688 F.3d at 876-77 (internal citations omitted). "The incentive reward is designed to compensate [them] for bearing these risks." *Id.*

12. Third, the Named Plaintiffs and the Non-Opt In Representative Plaintiffs spent a significant amount of time and effort in pursuing this litigation on behalf of the Eligible Settlement Class Members. This included the time and effort Named Plaintiffs expended in pre-litigation assistance to Plaintiffs' Counsel in investigating the claims brought, the time and effort they spent in assist in the preparation and review of the pleadings in this action, including the Complaint, and helping prepare for the mediation. *See Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 105 (D.D.C. 2013) (class members benefited from named plaintiff's "sustained contributions" to the litigation, which resulted in a sizable ERISA common fund); *In re Sw. Airlines Voucher Litig.*, No. 11 Civ. 8176, 2013 WL 4510197, at *11 (N.D. Ill. Aug. 26, 2013), *appeal dismissed* (Jan. 3, 2014) (approving service award in part because "there is a solid basis to believe that discovery," in which named plaintiffs actively participated, "improved the prospects for a favorable settlement"). Accordingly, the proposed Service Awards are approved.

**Fees and Costs of the Settlement Administrator and Attorneys Are Approved**

13. The Court approves of the Settlement Administrator's fees and costs of no more than _____ and No/100ths Dollars ($_____.00).

14. The Court grants Plaintiffs' Counsel's request for one-third of the settlement, Four Hundred Sixteen Thousand Six Hundred Sixty Three and No/100ths Dollars ($416,663.00), as attorneys' fees.

15. In awarding attorneys' fees, courts ultimately "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid*, 264 F.3d at 718. District courts must "undertake an analysis of the terms to which the private plaintiffs and their attorneys would have contracted at the outset of the litigation when the risk of loss still existed." *Sutton*, 504 F.3d at 692. They must "do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, [and] information from other cases . . . ." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005).

16. Plaintiffs' request for one-third of the settlement in attorneys' fees is consistent with the market in the Northern District of Illinois. *Id.* at 600 (approving attorneys' fees based, *inter alia*, on "legal hurdles that lead counsel faced in proving liability") (citing *Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)). Plaintiffs' Counsel are experienced wage and hour class and collective action litigators and have achieved a positive result on behalf of the class and collective.

17. Before initiating this litigation Plaintiffs' Counsel agreed with the Named Plaintiffs to request no more than one-third of any (at that time uncertain) future recovery. Thus, the Court knows what private plaintiffs "would have negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)," *In re Synthroid*, 264 F.3d at 718, 720, because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek, *see In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015) (stating "presumption of market-rate reasonableness" would have attached if parties had "established[ed] a fee structure at the outset of [the] lawsuit").

18. It was reasonable for the Named Plaintiffs to contract for one-third of the settlement fund to be paid to Plaintiffs' Counsel. In the Northern District of Illinois, class and collective action employment lawyers routinely contract to receive one-third of any potential settlement as compensation for taking on the risk of funding a potential multi-year litigation without any assurance of recovery. In addition, one-third is the standard contingent percentage that employment lawyers in the Northern District of Illinois charge individual clients. These multiple data points, confirming that plaintiffs routinely are willing to agree to a one-third contingency fee arrangement, reinforces that Plaintiffs' Counsel are requesting the proper market rate. *See In re Synthroid*, 325 F.3d at 976.

19. Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements. *See, e.g.*, *Koszyk*, 2016 WL 510916, at *3 (granting request for one-third of the settlement fund for attorneys' fees plus costs); *Watson,* No. 15 Civ. 11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF No. 34, 39 (same); *Taubenfeld*, 415 F.3d at 599-600 (noting class actions in the Northern District of Illinois have awarded fees of 30-39% of the settlement fund); *Gaskill v. Gordon*, 160 F.3d 361, 362-63 (7th Cir. 1998) (affirming award of 38% of fund); *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d at 842 (awarding fees on one-third common fund); *Goldsmith v. Tech. Solutions Co.*, No. 92 Civ. 4374, 1995 WL 17009594, at *7-8 (N.D. Ill. Oct. 10, 1995) (same and noting that "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"); 3 Alba Conte *et al.*, *Newberg on Class Actions* § 14.6 (4th ed. 2002) ("[F]ee awards in class actions average around one-third of the recovery[.]").

20. Plaintiffs' Counsel's decision to charge the market rate is also reasonable in light of

25

the significant risks of nonpayment that Plaintiffs' Counsel faced. At the outset of the litigation, Plaintiff's Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent the Named Plaintiffs. *Taubenfeld*, 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees). Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. *See Sutton*, 504 F.3d at 693-94 ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Plaintiffs' Counsel also faced significant legal hurdles in successfully opposing Defendant's anticipated Motion for Decertification, proving Defendant misclassified Sales Managers as exempt, and proving Defendant's misclassification of Sales Managers was willful. As the Seventh Circuit has noted, Plaintiffs' Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

21. Plaintiffs' Counsel's request for reimbursement of _____ and __/100 Dollars ($____.__) in actual out-of-pocket expenses incurred in prosecuting this case, including costs for case-related travel, electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, photocopies, telephone calls and Plaintiffs' portion of the mediator's fees, is granted. The Court finds these costs to be reasonably incurred.

**Dismissal and Post-Judgment Procedure**

22. This case is dismissed with prejudice. However, the Court will retain jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Settlement Agreement, including for overseeing the distribution of settlement funds.

26

23. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

It is so ORDERED this ___ day of _____, 2018

_____

Honorable Jorge L. Alonso
United States District Judge

DocuSign Envelope ID: 44042FAE-7411-4639-7688-FD85A512AEF7

# Exhibit B

DocuSign Envelope ID: 4042FAF5-7411-4839-A68D-FD85A612AEF7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRADLEY EGGLESTON, NICHOLAS MACHOVEC, SERENITY ALMOND, MATTHEW BUTLER and BRANDON ANDREWS on behalf of themselves and all others similarly situated,<br><br>            **Plaintiffs,**<br>  -against-<br><br>USCC SERVICES, LLC, a Delaware limited liability company,<br><br>            **Defendant.** | **CASE NO. 1:16-cv-6775** |

## OFFICIAL COURT NOTICE OF SETTLEMENT AND OPPORTUNITY TO JOIN COLLECTIVE ACTION

To:

[Name]
[Address]
[City, State Zip]

**If you were a Sales Manager employed by US CELLULAR in Illinois, Wisconsin, or Missouri any time between June 20, 2014 and September 1, 2017, you may join the collective action lawsuit settlement. Read this entire Notice before signing and cashing the check.**

**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

- This Notice is directed to any individual *who has not already opted-in to this action* and was employed by USCC Services, LLC ("Defendant" or "US CELLULAR") as a Sales Manager at any time between June 20, 2014 and September 1, 2017 (the "Eligibility Period").

- The Named Plaintiffs identified in the caption are former Sales Managers who sued US CELLULAR alleging that it failed to pay them and other Sales Managers for overtime hours they worked. The Plaintiffs filed the lawsuit as a collective and class action under

1

DocuSign Envelope ID: 4040FAE-7411-0237-A88F-FD85A512AEE7

the federal Fair Labor Standards Act ("FLSA") and Illinois, Missouri and Wisconsin state wage and hour laws.

- US CELLULAR has denied the Plaintiffs' allegations and asserts that Sales Managers were compensated correctly under the law. Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience. The Court has not made any ruling on the merits of the claims and no party has prevailed in this action. However, the Court has reviewed and approved this settlement and this Notice.

- Settlement Funds are being used to pay current and former employees who were employed as Sales Managers at any time during the Eligibility Period and to pay attorneys' fees, service awards, litigation costs, and the expense of administering the settlement.

- Under the allocation formula created by the settlement, you are being offered the gross settlement payment of $_____, prior to applicable withholdings as more fully explained below. This amount is based on the number of weeks in which you worked as an exempt-classified Sales Manager between June 20, 2014 and September 1, 2017.

- Neither Class Counsel nor US CELLULAR make any representations concerning the tax consequences of your settlement payment. You are advised to obtain personal tax advice prior to acting in response to this Notice.

- Your decisions have legal consequences for you. You have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **IF YOU SIGN THE CONSENT TO JOIN FORM** | By signing the enclosed Consent to Join form, you are agreeing to participate in the lawsuit and the settlement and you are releasing all claims to non-payment or improper payment of overtime compensation you may have against US CELLULAR in the position of Sales Manager between June 20, 2014 and September 1, 2017. |
| **IF YOU DO NOT SIGN THE CONSENT TO JOIN FORM** | If you do not want to participate in the lawsuit or be bound by the settlement, you should not sign the Consent to Join. If you do not sign and submit the Consent to Join on or before [CLAIM BAR DATE], you will not join the lawsuit, you will not receive a settlement payment in this case, and you will not release any claims against US CELLULAR. |

- These rights and options are explained more fully below.

## BASIC INFORMATION

DocuSign Envelope ID: 4040FAF5-7411-4637-A68D-FD85A512AE57

| **1. Why did I receive this Notice?** |
|---|

US CELLULAR's records state that you worked as an exempt-classified Sales Manager for US CELLULAR in one or more work weeks between June 20, 2014 and September 1, 2017 in Illinois, Missouri or Wisconsin.

You are receiving this Notice because you have a right to know about the settlement of a collective action lawsuit that affects your rights.

This Notice explains the lawsuit, the settlement and your rights and options.

Along with this Notice, you are receiving a Consent to Join form that you may complete and submit if you agree to join ("opt-in" to) this lawsuit and to release all claims against US CELLULAR for non-payment or improper payment of overtime compensation relating to your employment as an exempt-classified Sales Manager between June 20, 2014 and September 1, 2017.

The Court supervising this case is the United States District Court for the Northern District of Illinois located in Chicago, Illinois.  The lawsuit is known as *Eggleston, et. al. v. USCC Services, LLC.*, No. 1:16-cv-6775.

The individuals who filed the lawsuit are the "Named Plaintiffs."  US CELLULAR is the "Defendant."

| **2. What is this lawsuit about?** |
|---|

The lawsuit alleges that US CELLULAR misclassified Sales Managers as exempt from the right to receive overtime pay under federal, Illinois, Wisconsin and Missouri laws if and when they worked in excess of 40 hours in a workweek.

US CELLULAR denies these allegations and asserts that Sales Managers were classified correctly as exempt employees under federal and state wage and hour laws and were not entitled to overtime pay.

The Court has not made any ruling on the merits of the claims or defenses, and no Party has prevailed in this action.

| **3. What is a collective action?** |
|---|

In a "collective action," one or more individuals called "Named Plaintiffs" sue on behalf of other individuals who may have similar claims.  However, the individuals who have similar claims do not become part of the collective action unless they opt-in, or agree to join the collective action.  You may opt-in to this collective action and participate in the settlement of this lawsuit by signing and timely returning the enclosed Consent to Join.

**4. Why is there a settlement?**

The Court did not decide in favor of Plaintiffs or US CELLULAR and neither Party prevailed. The Parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation. But you need not opt-in if you believe the settlement is not in your interests.

## WHO IS IN THE SETTLEMENT

**5. How do I know if I will be included in the Settlement?**

You are receiving this Notice because you were employed by US CELLULAR as a Sales Manager in Illinois, Wisconsin or Missouri at some time between June 20, 2014 and September 1, 2017. If you complete and submit the Consent to Join, you will be bound by the settlement and you will be releasing claims for non-payment or improper payment of overtime compensation you may have against US CELLULAR in your position of Sales Manager between June 20, 2014 and September 1, 2017.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**6. What does the Settlement provide?**

The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to individuals who opt-in to the suit and settlement, any Court-approved service awards to Plaintiffs, interest, and the Settlement Administrator's fees and costs. The settlement funds for collective action members are being divided among current and former Sales Managers based on the number of weeks in which they worked as an Sales Managers during the Eligibility Period and whether they previously opted-in to the lawsuit or not. Settlement checks that are not cashed on or before [VOID DATE] will be null and void.

**7. How much is my payment and how was it calculated?**

Based on the allocation formula that has been approved by the Court, you are eligible for a gross settlement payment for $_____, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and half of which will be reported on IRS Form 1099. The allocation formula takes into account the number of weeks in which you worked as a Sales Manager during the Eligibility Period. The Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 12 below.

## HOW YOU GET A PAYMENT

4

DocuSign Envelope ID: 4042F4E-7411-0237A88-FD85-612AE57

**8. How do I get my payment?**

You will receive a settlement check if you sign and return the enclosed Consent to Join Form by **(Claim Bar Date)**.

**9. What am I giving up if I opt-in to this collective action and accept the settlement check?**

You will not become a member of this collective action unless you sign and return a properly completed Consent to Join on or before [CLAIM BAR DATE]. If you sign and cash the settlement check, you will be releasing all claims against US CELLULAR between June 20, 2014 and September 1, 2017 for non-payment or improper payment of overtime compensation relating to your employment as an Sales Manager. It also means that all of the Court's orders in this case will apply to you and will legally bind you.

By submitting the signed Consent to Join, you waive, release, and forever discharge any demands, claims and actions you have or may have between June 20, 2014 and September 1, 2017, against US CELLULAR, and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws in Illinois, Missouri and Wisconsin and all other state and local wage and hour laws, relating to your employment at US CELLULAR as an Sales Manager.

## THE LAWYERS REPRESENTING YOU

**10. Do I have a lawyer in this case?**

The Court has determined that the lawyers at the law firms of Shavitz Law Group, P.A. and Stephan Zouras, LLP are qualified to represent you and all individuals who opt-in to this collective action. These lawyers are called "Class Counsel." You will not be charged for these attorneys. You do not need to retain your own attorney to participate as a member of this collective action. However, you may consult with any attorney you choose at your own expense before deciding whether to opt-in to this case.

**11. How will the lawyers be paid?**

The Court has approved payment to Class Counsel of one-third of the settlement fund for attorneys' fees. These fees compensate Class Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement. The Court also has approved payment of Class Counsel's out-of-pocket costs. The costs of the Settlement Administrator are also paid from the settlement fund.

The Court has approved payments to the Named Plaintiffs to recognize the risks they took and their services to the collective action. The Named Plaintiffs who initiated the lawsuit before the settlement was reached will each receive a payment between $2,500.00 and $8,500.00 in addition to their settlement payment under the allocation formula.

### FOR MORE INFORMATION

| |
|---|
| **12. Are there more details about the Settlement?** |

This Notice summarizes the proposed settlement. More details are in a Settlement Agreement. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[SETTLEMENT ADMINISTRATOR]
US CELLULAR Sales Manager Settlement
[ADDRESS LINE ONE]
[ADDRESS LINE TWO]
Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

| |
|---|
| **13. How do I get more information?** |

If you have other questions about the settlement, you can contact the Settlement Administrator, or Class Counsel at the addresses and/or telephone numbers below:

Gregg I. Shavitz
Camar Jones
Shavitz Law Group, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
(561) 447-8888
(561) 447-8831 (facsimile)

Ryan Stephan
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (facsimile)

DATED: _____, 2018

DocuSign Envelope ID: 4040F4E5-7411-0839-A68D-FD85A512AE57

## CONSENT TO JOIN CLAIM FORM & RELEASE

<<Class Member Name>>
<<Street Address>>
<<City, State Zip>>

**DEADLINE TO RETURN CLAIM FORM:**  To receive your settlement payment, **you must timely complete, sign, and return this Claim Form**.  Your Claim Form must be postmarked by or received by facsimile or email, on or before **(Claim Bar Date)**.  If you lose the envelope, you should send the Claim Form to:

[SETTLEMENT ADMINISTRATOR]
US CELLULAR Sales Manager Settlement
Name of admin: XXXXX
Address:  XXXXXXXX
Address 2: XXXXXXXX
Phone: (XXX) XXX-XXXX
Facsimile: (XXX) XXX-XXXX
Email: XXXXXXXXXX

**CHANGE OF ADDRESS:**  If you change your address, please inform the Settlement Claims Administrator of your new address to ensure correct processing of your claim and delivery of your settlement payment.  It is your responsibility to keep a current address on file with the Settlement Claims Administrator.

**CONSENT TO JOIN COLLECTIVE ACTION:**

By signing, dating, and returning this Claim Form, I agree to be bound by the Settlement Agreement negotiated by Plaintiffs' Counsel, and consent to become a party plaintiff to this action under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  By signing I waive, release, and forever discharge any demands, claims and actions I have or may have had between June 20, 2014 and September 1, 2017, against USCC Services, LLC d/b/a US CELLULAR, and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws in Illinois, Missouri and Wisconsin and all other state and local wage and hour laws, relating to my employment with USCC Services, LLC as an exempt-classified Sales Manager.

_____          _____
Date                                                                    Signature
_____          _____
Name (Printed)                                                  Other (Maiden) Names Worked Under

Your personal contact information will not be filed with the court.

DocuSign Envelope ID: 4404CFAE-7411-4839-A68E-FD85A519AFE7

_____

Mailing Address

_____          _____

Phone Number                              Email Address

DocuSign Envelope ID: 4042FAE-7411-0239-7688-FD85161A0EF7

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

**BRADLEY EGGLESTON, NICHOLAS
MACHOVEC, SERENITY ALMOND,
MATTHEW BUTLER and BRANDON
ANDREWS on behalf of themselves and all
others similarly situated,**

            **Plaintiffs,**

    **-against-**

**USCC SERVICES, LLC, a Delaware limited
liability company,**

            **Defendant.**

**CASE NO. 1:16-cv-6775**

---

## OFFICIAL COURT NOTICE OF SETTLEMENT

To:

[Name]
[Address]
[City, State Zip]

**You joined the lawsuit identified above. Recently, the United States District
Court approved a settlement of the lawsuit and authorized this Notice.**

**A settlement check payable to you is enclosed. Read this entire Notice before
signing and cashing the check.**

- This Notice is directed to any individual who was employed by USCC SERVICES, LLC ("U.S. CELLULAR") as a Sales Manager and previously opted-in to this lawsuit by filing a consent to join the action.

- The Named Plaintiffs identified in the caption are former Sales Manager who sued US CELLULAR alleging that it failed to pay them and other Sales Managers for overtime hours they worked. The Named Plaintiffs filed the lawsuit as a collective and class action under the federal Fair Labor Standards Act ("FLSA") and Illinois, Missouri and Wisconsin state wage and hour laws.

- US CELLULAR has denied the Plaintiffs' allegations and asserts that Sales Managers

3

were compensated correctly under the law. Nevertheless, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience. The Court has not made any ruling on the merits of the claims and no party has prevailed in this action. However, the Court has reviewed and approved this settlement and this Notice.

- The settlement monies are being used to pay certain current and former employees who were employed as Sales Managers at any time during the Eligibility Period and to pay attorneys' fees, service awards, litigation costs, and the expense of administering the settlement.

- According to US CELLULAR's records, you worked as a Sales Manager in _____ workweeks during the Eligibility Period.

- Under the allocation formula created by the settlement, you are being offered the enclosed gross settlement payment of $_____, subject to withholdings as set forth below. This amount is based on the number of weeks in which you worked as a Sales Manager in the three years preceding the date you opted-in to this lawsuit (the "Eligibility Period"), and based on your status as an opt-in.

- Neither Class Counsel nor US CELLULAR make any representations concerning the tax consequences of your settlement payment. You are advised to obtain personal tax advice prior to acting in response to this Notice.

## BASIC INFORMATION

| 1. Why is there a settlement? |
|---|

The Court did not decide in favor of Plaintiffs or US CELLULAR and neither Party prevailed. The Parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation. The Plaintiffs and their attorneys believe that this settlement is a good outcome for all individuals who decided to opt-in to the suit.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 2. What does the Settlement provide? |
|---|

The settlement fully resolves and satisfies any claims for attorneys' fees and costs approved by the Court, all amounts to be paid to individuals who opt-in to the suit and settlement, any Court-approved service awards to Named Plaintiffs, interest, and the Settlement Administrator's fees and costs. The settlement funds for collective action members are being divided among current and former Sales Managers based on the number of weeks in which they worked as a Sales Managers during the Eligibility Period and whether they previously opted-in to the lawsuit or not. Settlement checks that are not cashed on or before [VOID DATE] will be null and void.

4

DocuSign Envelope ID: 4042FAE-7411-4B39-A68D-5D851612AE57

| **3. How much is my payment and how was it calculated?** |
| --- |

Based on the allocation formula that has been approved by the Court, you are receiving a gross settlement payment for $\_\_\_\_\_, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and half of which will be reported on IRS Form 1099. The allocation formula takes into account the number of weeks in which you worked as a Sales Manager during the Eligibility Period. The Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 7 below.

## HOW YOU GET A PAYMENT

| **4. How do I get my payment?** |
| --- |

A check is enclosed. All you have to do is sign and cash the settlement check.

| **5. What am I giving up by accepting the settlement check?** |
| --- |

By signing and cashing your settlement check no later than [VOID DATE], you waive, release, and forever discharge any demands, claims and actions you have or may have through September 1, 2017, against US CELLULAR, and its affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws in Illinois, Missouri and Wisconsin and all other state and local wage and hour laws, relating to your employment at US CELLULAR as a Sales Manager.

## THE LAWYERS REPRESENTING YOU

| **6. How will the lawyers be paid?** |
| --- |

The Court has approved payment to Class Counsel of one-third of the settlement fund for attorneys' fees. These fees compensate Class Counsel for investigating the facts, litigating the case and negotiating and finalizing the settlement. The Court also has approved payment of Class Counsel's out-of-pocket costs. The costs of the Settlement Administrator are also paid from the settlement fund.

The Court has approved payments to the Named Plaintiffs to recognize the risks they took and their services to the collective action. The Named Plaintiffs who initiated the lawsuit before the settlement was reached will each receive payments between $2,500.00 and $8,500.00 in addition to their settlement payments under the allocation formula.

DocuSign Envelope ID: 4042FAE-7411-4B39-A68D-FD85-612AE57

# FOR MORE INFORMATION

| 7.  Are there more details about the Settlement? |
|---|

       This Notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  You are encouraged to read it.  To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control.  You may obtain a copy of the Settlement Agreement by sending a request, in writing, to:

[SETTLEMENT ADMINISTRATOR]
US CELLULAR Sales Manager Settlement
[ADDRESS LINE ONE]
[ADDRESS LINE TWO]
Facsimile: (XXX) XXX-XXXX
Email: XXX@XXXX.com

| 8.  How do I get more information? |
|---|

       If you have other questions about the settlement, you can contact the Settlement Administrator, or Class Counsel at the addresses and/or telephone numbers below.

Gregg I. Shavitz
Camar Jones
Shavitz Law Group, P.A.
1515 S. Federal Highway, Suite 404
Boca Raton, Florida 33432
(561) 447-8888
(561) 447-8831 (facsimile)

Ryan Stephan
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
(312) 233-1550
(312) 233-1560 (facsimile)

DATED:  _____, 2018